UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CASE NO. 11 B 9728 |
| ) | |
| LIMITLESS DESIGN & CONSTRUCTION, INC,) | |
| ) | CHAPTER 11 |
| ) | |
| DEBTOR. ) | Hon. Jack B. Schmetterer |

### AGREED FIINAL ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL, AND GRANTING ADEQUATE PROTECTION TO BMO HARRIS BANK, N.A., RETROACTIVE TO MARCH 9, 2011

By agreement of the parties, and pursuant to the terms set forth in this Agreed Final Order, BMO Harris Bank, N.A. ( the "Bank" or the "Secured Creditor"), agrees to permit Limitless Design & Construction, Inc.,, (the "Debtor") to use the Bank's cash collateral, as said term is defined by 11 U.S.C. sec363(a).

For purposes of this Agreed Final Order, the Debtor and the Bank agree as follows:

1.  On or about March 9, 2011(the"Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is in possession of its assets and is authorized to continue to operate its business as a debtor-in-possession. No committee of unsecured creditors, trustee or examiner has been appointed in this chapter 11 case.

2.  As of the Petition Date, the Bank asserted a secured claim against the Debtor in the principal amount of not less than $92,000.00 (exclusive of interest, legal fees and other miscellaneous fees and costs) (the "Obligation"), as evidenced by a certain promissory note dated June 15, 2009 in the original stated principal amount of $80,000.00(the 'Note"), all as supplemented

DOC. 230437

by the terms of a Commercial Security Agreement dated November 20, 2006 (the "Loan Agreement"). The Obligation is secured by a duly perfected first priority security interest in substantially all of the Debtor's business assets (the "Collateral"), which security interest is evidenced by (a) a certain Commercial Security Agreement dated November 20, 2006 executed by the Debtor and the Bank, and (b) certain UCC-1 financing statements on file in the State of Illinois.

3. The Debtor stipulates that the total principal debt due to the Bank on Note as of the Petition Date is $79,060.66. The Debtor further stipulates that the Bank is fully secured and that the Bank is entitled to: (a) post-petition interest; (b) attorney's fees and other fees and expenses as authorized under the Notes and the Business Loan Agreement; and (c) the rights afforded a security creditor under section 506(b) of the Bankruptcy Code.

4. The proceeds of the Collateral constitute cash collateral as defined in section 363(a) of the Bankruptcy Code (the 'Cash Collateral').

5. The Debtor asserts that it does not have sufficient unencumbered funds or working capital with which to continue to operate its business (the "Business") as a debtor in possession, and as a consequence, the Debtor has an immediate need to use the Cash Collateral to pay its reasonable and necessary post-petition operating expenses in the ordinary course of its business and to use the Collateral to operate the Business, all of which are subject to the pre-petition security interest of the Bank. Therefore, the Debtor cannot continue to operate the Business without use of the Cash Collateral and the Collateral in accordance with the terms of this Agreed Final Order, the Note and the Commercial Security Agreement. Accordingly, the Debtor and the Bank believe that the terms authorized in this Agreed Final Order are fair under the circumstances and that good cause has been shown for the entry of this Agreed Final Order and should be authorized by this Court.

6. The Bank is making a good faith and reasonable request for adequate protection of its interest in the Collateral.

7. The Bank is willing to allow the Debtor use of the Cash Collateral and the Collateral to continue to operate the Business during the pendency of this chapter 11 case, subject to terms and

conditions set forth in this Agreed Final Order.

8. The Parties stipulate that the Bank has acted in good faith, that entry of this Agreed Final Order is in the best interest of the Debtor, its creditors and its estate, and therefore, there is good cause for the entry of this Agreed Final Order.

9. Simultaneously with this entry of the Interim order the Debtor sought entry and approval to sell a 2003 Chevrolet 2500 HD Pickup Truck and 2001-873 Model Bobcat Skid Steer whereby, the proceeds of not less than $25,000.00 from said sale shall be applied first to outstanding accrued and unpaid interest on the Note in the amount of $11,908.51 plus attorney fees. The balance of the proceed shall be applied to reduce principal. Late charges and fees on the note shall be reserved for future determination and agreement. If the proceeds from the sale of the aforementioned property do not total $25,000.00 then the Debtor shall be responsible for the short fall. Since the entry of the Interim order $17,080.00 has been turned over to the Bank from the sale of one piece of equipment along with monthly payments reducing the Principal balance on the loan to $73,570.44 plus accrued interest and attorney fees. Upon payment of all of Bank's principal, interest and attorney fees on the Note, the Bank will release and terminate its perfected security interest in the Pre Petition and Post Petition accounts receivable of the Debtor.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

A. **Authority to use Cash Collateral and other Collateral.**

1. Subject to the terms and conditions set forth in this Agreed final Order, the Debtor shall be, and hereby is, authorized to use the Cash Collateral for the purposes and in the amounts set forth in the budget attached hereto and incorporated herein as Exhibit A (the "Budget"). Without the prior consent of the Bank or an order of this Court, the Debtor shall not spend or incur obligations, other than for the purposes and in the amounts set forth in the Budget. Except as

- 3 -

otherwise provided herein, the Debtor's authority to use the Cash Collateral in accordance with the Budget shall continue until confirmation of the Debtor's Plan and Disclosure Statement.. In the event that it is determined that any funds which the Debtor has or which may hereafter come in to the Debtor's possession were used by the Debtor under this Agreed Final Order and such funds were not Cash Collateral, the Debtor shall be deemed to have first used those funds to pay the expenses set forth in the Budget, and the books and records of the Debtor shall be adjusted to accurately reflect the treatment of such funds. In the event such funds other than Cash Collateral are insufficient to pay the expenses as allowed in the Budget, then, and only then, shall the Debtor be deemed to have used the Cash Collateral to pay the Budget expenses. All Cash Collateral shall be segregated as required by the Bank or as otherwise ordered by the Court. The Debtor's compliance with the Court's Chapter 11 Operating Order shall constitute compliance with the requirement that the Debtor segregate Cash Collateral.

B. **Adequate Protection Payments to the Bank**.

1. Prior to March 10, 2012 the Debtor shall pay to the Bank all past due interest on the Note from the proceeds from the sale of the property listed above and any shortfall contribution. Made by the Debtor.

2. Also beginning on November1, 2011, and on the first day of each successive month, the Debtor shall pay to the Bank as adequate protection the sum of $1,000.00 which shall be applied to interest and then principal until terminated by order of Court.

C. **Post Petition Replacement Liens Granted and Additional Collateral Provided for Adequate Protection**.

1. The Debtor hereby grants the Bank: (a) a security interest in the property of

- 4 -

DOC. 230437

the Debtor and property of the Debtor's estate in which the Bank held a security interest immediately prior to the Petition Date, except the accounts receivable of Debtor (which security interest is released pursuant to paragraph 9 of this Order), to the extent the Bank does not already have a continuing security interest in such property pursuant to section 552(b) of the Bankruptcy Code; and (b) a replacement and additional security interest and lien in and to all property of the Debtor's estate in which the Bank held a security interest immediately prior to the Petition Date except the accounts receivable of Debtor (which security interest is released pursuant to paragraph 9 of this Order), including, but not limited to, traceable property and traceable proceeds, provided however, any and all rights of the Debtor or creditors to seek avoidance of any pre-petition security interests as permitted by law are not prejudiced by this Agreed final Order. There is no need for the execution by the Debtor of security agreements, pledge agreements, financing statements or otherwise, or the filing, or recording by the Bank of financing statements or other documents otherwise provided for by state or federal law in order to perfect any replacement or additional security interest or other liens granted to the Bank pursuant to this Agreed Final Order. For the purposes of this Agreed Final Order, all cash and cash equivalents at the Petition Date and all post-petition cash and cash equivalents which are proceeds subject to the Bank's security interests pursuant to section 552(b) of the Bankruptcy Code constitute Cash Collateral pursuant to section 363 of the Bankruptcy Code.

2. The Bank is relieved from the provisions of section 362(b) of the Bankruptcy Code for the limited purpose of allowing the Bank to make any and all filings the Bank shall choose to make with respect to the security interests granted under this Agreed Final Order. Subject to further order of this Court and without prejudice to the right of the Bank to seek relief under section 362(d) of the Bankruptcy Code, the Bank is not relieved from the provisions of section 362(a) of the Bankruptcy Code for any other purpose.

3. The Debtor shall provide certain interests, as set forth below, for adequate protection against any diminution in the value of the Collateral which may occur by reason of the

- 5 -

Debtor's use of the Cash Collateral (the "Collateral Diminution"). In addition to the other provisions in this Agreed Interim Order, as additional consideration for the consent of the Bank to the use of Cash Collateral, and in consideration for the additional advances being provided to the Debtor pursuant to the Budget and the Notes, subject at times to the rights of the Bank to claim that the items below do not constitute adequate protection, in addition to the security interests and replacement and additional security interests and liens granted to the Bank in this Agreed Final Order, said replacement and additional liens being senior to the liens granted in this paragraph, the Bank shall be, and hereby is, granted valid, perfected and enforceable security interest and lien in: (i) any assets acquired by the Debtor after the Petition Date other than Debtor's accounts receivable; and (ii) any of the Debtor's assets, including vehicles and leases, that are not subject to a security interest or are subject to a security interest that is subsequently avoided (the "Post-petition Collateral").

  4. The security interests, pledges, assignments and liens granted in this Agreed Final Order in the Post-petition Collateral shall be subject only to any valid, perfected and enforceable liens in existence on the Petition Date

  5. Any person or entity receiving a payment or transfer of an interest of the Debtor in property of the estate, not authorized by this Agreed Final Order or other order of this Court, shall remain subject to the jurisdiction of this Court and subject to recovery or disgorgement, and such payment or interest transferred shall remain subject to the security interests, mortgages, pledges, assignments or liens granted to the Bank by this Agreed Final Order.

### D. Budget Performance and Further Financial Terms and Post-Petition Advances.

  1. The Debtor shall comply with the aggregate expenditures set forth in the Budget and not materially vary more than five (5%) percent on a monthly basis, or such greater variances as may be approved by Bank in advance on a case-by-case basis; otherwise the Bank may give notice to this Court, the Debtor and counsel for the Debtor, that the Debtor is in violation of

this Agreed Final Order and this Court shall provide the Bank an expedited hearing regarding prohibition of further use of Cash Collateral and for relief from the automatic stay upon filing of a motion by Bank.

2.    The Debtor shall submit a variance report by facsimile to the Bank's attorney, Alan I. Ehrenberg c/o Ehrenberg & Egan, LLC 330 N. Wabash, Suite 2905 Chicago, Illinois 60611, no later than the fifteenth (15th) business day of each month with comparison of actual to budgeted sales and expense for the prior month in the same detail as is in the Budget.

3.    All other reporting required in the pre-petition loan documents in place between the Debtor and the Bank shall remain in same and in full force and effect including, but not limited to financial statements.

### E.    Execution and Delivery of Documents.

1.    The Debtor shall have 45 days upon request to execute and deliver to the Bank such agreements, financing statements, instruments, and other documents confirming the indebtedness and the validity of the Bank's perfected post-petition security interest granted pursuant to this Agreed Final Order, and otherwise to carry out the terms of this Agreed Interim Order.

### F.    Events of Default.

1.    The Debtor shall be in default under any term of this Agreed Final Order that is not cured within Fourteen (14) business days of receipt by the Debtor and counsel for the Debtor of written notice from the Bank of said default.

2.    A trustee is appointed under chapter 11 or chapter 7 of the Bankruptcy Code, without the consent of the Bank.

3.    This chapter 11 case is dismissed or is converted to a chapter 7 case.

4.    Insurance insuring the Collateral is allowed to lapse by the Debtor.

### G.    Remedies Upon an Event of Default.

- 7 -

DOC. 230437

1. If an Event of Default occurs under Paragraph F of this Agreed Final Order, then upon five (14) business days after receipt by the Debtor and Debtor's counsel of written notice, which notice shall be sent by both fax transmission and overnight mail, the Debtor shall have the opportunity to cure such condition of default (with the notice required under Section F(1) satisfying the within requirement), the Bank shall have all remedies available to it hereunder, under the documents evidencing such secured claim or under law, including the following:

a) The Debtor shall cease using the Cash Collateral and shall segregate any Cash Collateral it has or may subsequently receive, subject to distribution upon agreement of the Bank;

b) The Bank may thereafter apply all Cash Collateral which it receives to the payment of the indebtedness in accordance with the terms of this Agreed Final Order and the Note;

c) if an event of default occurs under paragraph F, relief from the automatic stay imposed by section 362 of the Bankruptcy Code may be granted only after the Bank files a notice of default with this Court, which shall be served upon both the Debtor and the Debtor's counsel on the date of filing, which notice may not be filed until the expiration of the five (5) business day notice period provided herein; and

d) If an event of default occurs under paragraph F, and to the extent a dispute exists between the parties regarding the default, the Debtor shall have the right to file a request with this Court for a hearing on the matter within five (5) business days of receiving written notice of a condition of default from the Bank. Said hearing shall be conducted on an emergency basis at the earliest convenience of this Court. In the event such a motion is filed, the automatic stay shall remain in effect until entry of a final order resolving such motion.

**H.** **Prohibited Acts**.

1. During the term of this Agreed Final Order, the Debtor shall not, without the consent of the Bank or an order of this Court:

a) Engage in any transaction which is not in the ordinary course of its business;

b) Engage in a new or different business;

c) Increase its investment, whether by purchase, lease or otherwise, in fixed or capital assets; or

d) Create, assume or suffer to exist any lien or security interest in any Cash Collateral or other

- 8 -

DOC. 230437

Collateral in favor of any person other than the Secured Creditor's except any lien expressly consented to in writing by the Secured Creditor.

I.    **Other Provisions**.

1.    The automatic stay is modified as to the Bank only to the extent necessary to implement the terms of this Agreed Final Order.

2.    In addition to the Bank's right to relief from stay under Paragraph G hereof, the Bank at any time may file a motion for relief from stay for any other reason.

3.    This Agreed Final Order shall perfect the Post-Petition Security Interest in the Collateral hereby granted to the Bank. The Post-Petition Security Interest shall be valid and perfected against all liens and security interests in the Collateral held by any other entities and persons.

4.    The Debtor shall provide the Bank with copies of all monthly U.S. Trustee reports, within five (5) business days of the date such reports were filed with this Court.

5.    The Debtor shall at all times keep the Pre and Post-Petition Collateral insured as required by the loan documents and in accordance with the requirements of the United States Trustee and shall provide documents evidencing continuing and adequate coverage showing BMO Harris Bank , N.A. as Loss Payee.

6.    In addition to the financial reports set forth in subsection c hereof, at the request of the Bank, the Debtor shall also provide to the Bank the financial records and periodic financial statements of the business and/or any documents that the Bank may deem necessary or desirable to monitor the condition and value of the collateral and the financial conditions and operations of the business.

7.    The Bank shall have the right to inspect the Collateral and the Post-Petition Collateral at reasonable times during normal business hours with 72 hours' prior telephone notice to the Debtor.

8.    The Debtor will maintain complete and accurate books and records in

- 9 -

accordance with generally accepted accounting principles consistently applied.

9. The Debtor shall provide the Bank copies of its schedules and statement of financial affairs upon filing same with this Court.

Any notice to be provided by the Bank shall be also served upon the U.S. Trustee.

10. If this Order never becomes a final and non appealable order, if the Order is subsequently terminated, or if any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) the priority, validity, enforceability, or effectiveness of any lien, security interest, priority, or other benefit authorized hereby with respect to any Cash Collateral or post-petition debt incurred prior to the effective date of such subsequent order (and all such liens, security interests, priorities and other benefits shall be governed by the original terms of this Order); (b) the stipulations and findings of fact contained herein; or (c) the validity, enforceability or effectiveness of any payment received and applied by Bank during the effective term of this Order upon the pre-petition or post-petition claims of Bank.

11. This Order shall be deemed entered and Retroactive to the Petition Date. The Bank is not waiving any of its rights to enforce any prior unauthorized payments not made in the ordinary course of business.

### J.   **Binding Effect of Order**.

1. The provisions of this Agreed Final Order shall be binding upon and inure to the benefit of the Bank and the Debtor and their respective successors and assigns (excluding any Trustee hereinafter appointed for the estate of Debtor under chapter 11 or chapter 7 of the Bankruptcy Code, third parties not subject to this Agreed Final Order and any Official Committee of Unsecured Creditors (the 'Committee') subsequently appointed in this case, and shall survive the

- 10 -

DOC. 230437

term of this Order.

**SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

2/16/12

- 11 -

DOC. 230437

AGREED AND CONSENTED TO:

BMO HARRIS BANKS, N.A.

By: _____
Counsel for the Bank
Alan I. Ehrenberg
EHRENBERG & EGAN, LLC, LLC
330 N. Wabash Suites 2905
Chicago, Illinois 60611
(312) 253-8640
(312) 263-8660 fax
aehrenberg@ehrenbergeganlaw.com

LIMITLESS DESIGN & CONSTRUCTION, INC.,

By: _____
Counsel for Debtor
~~William J. Flotow~~   Cohen & Krol
~~800 E. Northwest Highway~~   105 W. Madison
~~Palatine, IL 60074~~   Chicago, IL 60603
          312-368-0300

(312) 251-1000
(312) 251-1010 fax
billflotow2@aol.com

DOC. 230437

Case: 11 B 09728                         Doc 1.0                    Filed 11/15

## 2011-2012 Cash Budget & Expenses Per Month

|  | Dec. | Jan. | Feb. | Mar. | Apr. | May |
|---|---|---|---|---|---|---|
| Materials | 8500 | 2500 | 500 | 500 | 2500 | 9000 |
| Licenses & Permits | 150 | 0 | 0 | 150 | 150 | 300 |
|  |  |  |  |  |  |  |
| Vehicle Repair | 400 | 1000 | 1000 | 650 | 500 | 400 |
| Registrations | 250 | 0 | 0 | 0 | 0 | 250 |
| Equipment Repair | 150 | 250 | 250 | 250 | 250 | 150 |
| Fuel | 800 | 500 | 500 | 500 | 600 | 800 |
|  |  |  |  |  |  |  |
| Wages | 4000 | 1000 | 500 | 500 | 1000 | 5000 |
|     Tax Liability | 750 | 180 | 90 | 90 | 180 | 950 |
| Medical | 200 | 0 | 0 | 0 | 200 | 0 |
| Office Expense: |  |  |  |  |  |  |
|     Internet/Web Site | 175 | 175 | 175 | 175 | 175 | 175 |
|     Telephone - Land | 150 | 150 | 150 | 150 | 150 | 175 |
|     Telephone - Wireless | 160 | 160 | 160 | 160 | 160 | 160 |
|     Software | 0 | 150 | 0 | 150 | 0 | 150 |
|     Consulting | 250 | 250 | 400 | 500 | 250 | 250 |
|     Utilities | 200 | 250 | 250 | 250 | 200 | 150 |
|     Advertisement | 0 | 0 | 100 | 200 | 200 | 100 |
|     Insurance | 500 | 500 | 500 | 500 | 500 | 500 |
|  |  |  |  |  |  |  |
| Rent - Building | 7324 | 7324 | 7324 | 7324 | 7324 | 7324 |
|     Association Dues | 875 | 875 | 1025 | 1025 | 1025 | 1025 |
|     Property Taxes | 750 | 750 | 750 | 750 | 750 | 750 |
|     Special Assessment | 0 | 0 | 0 | 2500 | 2500 | 0 |
|     Building Improvements | 0 | 250 | 0 | 500 | 0 | 250 |
|  |  |  |  |  |  |  |
| Line of Credit | 1000 | 1000 | 1000 | 1000 | 1000 | 1000 |
| Education/Training | 0 | 0 | 0 | 200 | 250 | 0 |
| Professional Fees | 0 | 500 | 0 | 500 | 0 | 500 |
|  |  |  |  |  |  |  |
|  | 26584 | 17764 | 14674 | 18524 | 19864 | 29359 |

*Exhibit A* (handwritten signature/annotation)